ALEXANDER BOYD *v.* H. G. BLANKMAN.

HEIR RETAINS AN ASSIGNABLE INTEREST IN LAND BOUGHT BY ADMINISTRATOR AT HIS OWN SALE.—If the administrator of an estate makes a sale of land belonging to the estate, under an order of the Probate Court procured by him, and at the sale becomes the purchaser through another person, who takes and holds the legal title in trust for the administrator, and afterwards conveys it to him, the heir retains such an equitable interest in the land as is assignable, and the assignee may maintain an action against the administrator to enforce a trust.

ADMINISTRATOR BUYING AT HIS OWN SALE IS TRUSTEE FOR HEIR.—If an administrator becomes a purchaser, through another person, of land of the estate sold by him under an order of the Probate Court, the heir retains the equitable title,

Points decided.

and his deed conveys such equitable title, while the legal title is vested in the administrator who holds it in trust.

SAME.—In such case the deed of the heir conveys the equitable title, and his deed is evidence of his intention to disaffirm the sale.

NOT NECESSARY FOR *Cestui Que Trust* TO DISAFFIRM TRUSTEES PURCHASE OF TRUST ESTATE.—Where an administrator at his own sale becomes the purchaser through another person of land of the estate, there are strong reasons for holding that the relation of trustee and *cestui que trust* is not by the fact of the sale shifted from the land to the proceeds of the sale, but that the administrator remains a trustee as to the land until the heir affirms the sale.

PURCHASE BY ADMINISTRATOR AT HIS OWN SALE NOT VOID.—If an administrator at his own sale, made under an order of the Probate Court, buys the land of the estate through another person, the sale is not void, but only voidable at the election of the heirs or other persons interested in the estate, who may have the sale set aside and the administrator declared a trustee.

ORDERS OF PROBATE COURT.—If the Probate Court, in a matter where it has jurisdiction, makes an order upon insufficient evidence, or contrary to the evidence, the order cannot on that ground be attacked in a collateral proceeding.

ORDER OF PROBATE COURT TO SELL REAL ESTATE.—If an administrator procures an order of the Probate Court for the sale of real estate to pay a debt which the administrator had previously paid with funds of the estate, it is not a fraud which will enable the order to be attacked in a collateral proceeding.

SAME.—An order of a Probate Court to sell all the real estate of an intestate to pay debts, when the sale of a small portion would have been sufficient, cannot for this reason be set aside in a collateral proceeding.

IGNORANCE AS A GROUND FOR RELIEF IN EQUITY.—The fact that a person is unlearned and ignorant of legal proceedings affords no ground of relief in equity, unless it also appears that he relied for information upon the person against whom relief is sought, and such person misrepresented the state of facts.

STATUTE OF LIMITATIONS.—The Statute of Limitations is applicable alike to causes of action in equity and at law.

PLEADINGS IN ACTION FOR RELIEF ON GROUND OF FRAUD.— When the cause of action stated in the complaint is for relief on the ground of fraud, and is stated to have accrued more than three years before the commencement of the action, the complaint should also aver that the acts constituting the fraud had been discovered within three years; but if the replication contains this averment, and this issue is tried without objection, the irregularity in the manner of presenting the issue will be disregarded.

PLEADING STATUTE OF LIMITATIONS.—A defendant relying on the Statute of Limitations should not allege matter of law, but the facts which bring him within the statute.

ANSWER SETTING UP STATUTE OF LIMITATIONS.—An answer stating that the cause of action has not accrued within five years, is sufficient for five years; and for any period of limitation named in the statute, less than five years.

CONSTRUCTIVE FRAUD—STATUTE OF LIMITATIONS.—The clause in the seventeenth section of the Statute of Limitations, providing that an action for relief on the ground of fraud shall not be deemed to have accrued until the discovery of the facts constituting the fraud, is applicable to constructive fraud as well as fraud in fact.

LIMITATION OF TIME FOR RELIEF ON GROUND OF FRAUD.—An action for relief on the ground of fraud may be commenced at any time within three years after a

discovery of the facts constituting the fraud, or of facts sufficient to put a person of ordinary intelligence and prudence on inquiry.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

Jack Hina died at the City of San Francisco, intestate, on the 3d day of October, 1850, leaving Mary Hina, his widow, him surviving, his sole heir.

The said Mary Hina, and the defendant Henry G. Blankman, were appointed administrators of the estate of said Jack Hina, deceased, and duly qualified as such, and took upon themselves the duties of such administrators.

The property and assets of such estate were the lands and premises described in the complaint, being fifty-vara lot Number Two Hundred and Eighty-Two on the official map of San Francisco; and there came to the hands of the defendant, as administrator, the sum of eight hundred and ninety dollars in cash, and there was other personal estate of the value of about two hundred dollars.

Said lands and premises were subject to an incumbrance, by way of mortgage, in the sum of seven hundred dollars, executed by said Jack Hina in his lifetime, bearing interest at the rate of ten per cent per month, on which interest was paid by Jack Hina in his lifetime, to the 24th of August, 1850.

On the 16th day of December, 1850, the defendant, as administrator, presented a petition to the Probate Court for the sale of said lands and premises to pay said mortgage debt and expenses of administration, in which petition the said Mary Hina, co-administrator, was not joined.

The only debt or claim against the said estate, excepting the costs and expenses of administration, was the said mortgage debt.

On the 24th day of December, 1850, and while the proceedings for a sale were pending in the Probate Court, the defendant Blankman paid the amount due on said mortgage to the mortgagee, and procured and caused the said mortgage to be

assigned to one Joseph B. Bidleman for his, the said Blankman's benefit.

Said Blankman continued to prosecute said application before the Probate Court for a sale of said premises, and obtained an order for such sale, and on the 15th day of February, 1851, said premises were put up for sale at public auction, and struck off to one William A. A. Reis, as the purchaser, at the price and sum of fourteen hundred and fifty dollars, and a conveyance was made by said Blankman, as administrator, to said Reis, but in fact for the benefit of the defendant Blankman, and no money was in fact paid by said Reis on such sale and purchase.

On the 10th day of April, 1851, the said Reis conveyed the said lands and premises to said Joseph B. Bidleman, who took said conveyance and held said lands thereunder in trust and for the benefit of said Blankman.

On the 19th day of February, 1851, the said Blankman caused an action to be commenced in the name of the said Joseph B. Bidleman, as plaintiff, in the District Court of the Fourth Judicial District, wherein said Blankman, as administrator, and said Reis, were made defendants, and were the only defendants, for the purpose of foreclosing said mortgage and selling said premises. A judgment and decree was rendered in said action by and with the written consent of the defendants therein, for the foreclosure and sale of said premises, and on the 31st day of March, 1851, said premises were put up for sale under said decree, and struck off to said Joseph B. Bidleman, as the purchaser, for the sum of eight hundred and fifty-eight dollars, but in fact for the benefit of said defendant Blankman; and on the first day of April, 1851, the Sheriff executed a deed to said J. B. Bidleman, as such purchaser, who took the same in trust and for the benefit of said Blankman.

Afterward, and in the month of April, 1851, the said Blankman caused an action to be commenced and prosecuted in the District Court of the Fourth District, in the name of said Bidleman, as plaintiff, but for the benefit of said Blankman,

and against the said Mary Hina, as defendant, to recover possession of said lands and premises, and such proceedings were had that judgment was recovered in favor of the plaintiff therein for the possession of said premises; a writ of execution was issued on said judgment, and was executed on the 12th day of June, 1851, by removing said Mary Hina from the premises, and putting said Bidleman in possession thereof.

On the 20th day of December, 1851, the said J. B. Bidleman made, executed, and delivered to said Blankman a deed of conveyance of said premises, which conveyance was therein expressed to be for the consideration of fifteen hundred dollars, but no consideration was in fact paid, or agreed to be paid; and such conveyance was made at the request of said Blankman, and without any consideration, which said conveyance was acknowledged and duly recorded in the office of the Recorder of the County of San Francisco, on the 3d day of January, 1852.

Said Mary Hina left and removed from the City and County of San Francisco about the month of June, 1851, and after she was removed from the premises under the aforesaid writ of execution, and has ever since resided in the County of El Dorado, in this State, more than one hundred and fifty miles from the City of San Francisco, and never returned to the said city and county till after the commencement of this action.

On the 18th day of April, 1851, the said Blankman rendered his final account and was discharged by the order of the Probate Court from his office as administrator of said estate.

On the 28th day of February, 1861, the said Mary Hina sold, assigned, transferred and conveyed to the plaintiff the said lands and premises, and all her rights and interests therein and her claim thereto, and to the rents during the time the said Blankman has held and enjoyed the same.

In 1861, just before the commencement of the action, Bidleman first informed Mary Hina that he purchased the property in trust for Blankman, and at Blankman's request, and paid no consideration for it. Blankman had never given her this information.

The Court below found that there was no fraud in fact, and also found that the knowledge that the purchase and sale of the property at the probate and foreclosure sales were made in trust for the defendant Blankman, came to the knowledge of Mary Hina more than five years before the commencement of the action.

The action' was commenced in March, 1861. The Court below rendered a judgment for defendant, and plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Doyle & Barber*, and *Delos Lake*, for Appellant.

Blankman, in selling the property of Hina's estate under the order of the Probate Court, was acting as a trustee for the heir, Mary Hina. (*Davoue* v. *Fanning*, 2 J. C. 256; *Baker* v. *Whiting*, 2 Sumn. 481; *Van Horne* v. *Fonda*, 5 J. C. 409.)

The sale by himself to himself, being in violation of his duty as trustee, did not discharge the trust, and he still continued a trustee of the legal estate for Mary Hina's benefit, subject to her right to affirm or disaffirm the sale, which right was incident to the equitable estate or trust in the property which she still possessed.

To the point that a trustee purchasing at his own sale remains a trustee, see *Fox* v. *Mackreth*, 1 White & Tudor L. C. 79, 109, 101, 123; *Rogers* v. *Rogers*, 1 Hopkins, 524; *Brown* v. *Lynch*, 1 Paige, 147; *Drysdale's Appeal*, 2 Harris, 537; *Jenkins* v. *Eldridge*, 3 Story, 290; *Davoue* v. *Fanning*, 2 J. C. 262; 2 Spence Eq. Juris. 256.

That no act of the trustee shall prejudice the equitable estate of the *cestui que trust*, see 1 Cruise's Dig. 449, §9; Id. 397, §66; Story Eq. Juris. §1,261; 2 Spence Eq. Juris. 876.

This trust or equitable estate in Mary Hina would, in the natural course of events, have descended to her heirs. (1 Cruise's Dig. 407, §9; *Dobson* v. *Racey*, 3 Sandf. Ch. 61; *Campbell* v. *Johnson*, 1 Id. 148; *Ward* v. *Smith*, 3 Id. 592; *Evertson* v. *Tappen*, 5 J. C. 497, 513.)

It therefore passed to the plaintiff under and by virtue of the conveyances set forth in the transcript. (1 Cruise's Dig. 407, §8; Id. 405–6, §§1–4; Lewin on Trusts, 498, 655; *Quinn* v. *Moore*, 15 N. Y. 433; *Daker* v. *Whiting*, 3 Sumn. 477, 480, 482, 484, which is precisely in point.

Blankman could derive no equitable title through a purchase fraudulent in law, and in direct contravention of the statute. (Story's Eq. Juris. §§1,264, 1,265.) It is claimed that the equitable estate must have been in Blankman, because he could have conveyed a good title, legal and equitable, to a *bona fide* purchaser. But the trustee of the legal estate can always do this. (1 Cruise Dig. 449, §10.) So a thief who has no property in goods can vest a good title in the purchaser, according to the English law, by sale at market overt. Other illustrations might be drawn from the law of negotiable securities, bills of lading, etc.

The provision of the Statute of Limitations applicable to this case is contained in the seventeenth section of the Act, which prescribes three years as the limitation of an action for relief on the ground of fraud, the cause of action not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud.

The one hundred and ninetieth section of the Probate Act refers to sales made in good faith by the administrator to a third party, which, owing to some irregularity in the proceedings, pass no title. The object of this provision is to secure the title of the purchaser under such sales after the lapse of three years. But suppose the administrator had fraudulently sold to a fraudulent purchaser a part of the decedent's estate, and that the heir had filed a bill against the purchaser to set aside the conveyance on the ground of fraud, can it be doubted that the seventeenth section of the Statute of Limitations would apply to the case? And if it would apply to a suit against the purchaser from the administrator, why not to a suit against the administrator himself when he becomes the purchaser?

Section one hundred and eighty-nine, if it applies to a case like the present, merely furnishes the heir with a cumulative remedy. Can any reason be suggested why the Legislature, after having positively prohibited the administrator from purchasing the estate entrusted to his charge, should permit him to retain his purchase undisturbed, if, with all the means of concealment at his command, he can cover up the transaction for the period of three years? The fraudulent purchaser of property at an administrator's sale, whether such purchaser be a third party or the administrator himself, is liable to an action for "relief on the ground of fraud" at any time within three years after the discovery of the facts constituting the fraud. If the sale by Blankman to himself was utterly void, the plaintiff is still entitled to the relief demanded. For as Blankman continued after the sale to hold the property subject to the trust, being still the trustee of Mary Hina, the *cestui qui trust*, the plaintiff is entitled to have that trust declared, to an account of the rents and profits, and to a surrender of possession. (2 Washburn Real Prop., p. 210, §18; Willard's Eq. Jurisprudence, 48; *Mohawk Bank* v. *Atwater*, 2 Barb. Ch. 62.)

Supposing the sale void, the Statute of Limitations never began to run, as against Mary Hina, until 1861, because Blankman never disclosed to her, nor did she ever learn, nor was she chargeable with notice of the fact until then, that he had himself purchased the property, or that he claimed possession by virtue of such purchase. (Tiffany & Bullard on Trustees, 715; *Way* v. *Cutting*, 20 N. H. 188, *West* v. *Sloan*, 3 Jones' Eq. N. C. 103; *Randall* v. *Errington*, 10 Vesey, 428; 1 White & Tudor, L. C. 136, 117; *Painter* v. *Henderson*, 7 Barr. 50.

*E. W. F. Sloan*, for Respondent.

A purchase by trustee, whether in his own name or in the name of another, is not, *per se*, fraudulent. (*Campbell* v. *Walker*, 5 Ves. 678, 680, 681; *Whichcote* v. *Lawrence*, 3 Ves. Jr. 750; *Prevost* v. *Gratz*, 1 Pet. C. C. R. 368; *S. C. on*

*Appeal,* 6 Wheat. 481 ; *Van Epps* v. *Van Epps,* 9 Paige, 240 ; *Davoue* v. *Fanning,* 2 J. Ch. R. 268 ; *Famour* v. *Brooks,* 9 Pick. R. 202 ; *Jackson* v. *Woolsey,* 11 J. R. 455 ; 1 Story's Eq. Jur., Secs. 321, 322, 1,261, 1,262.)

In *Michaud* v. *Girod,* 4 How. U. S. 568, cited by appellant, there are some unguarded expressions in the opinion of the Court, as delivered by Mr. Justice Wayne, to the effect that such a purchase is, *per se,* fraudulent and void. It will be observed, however, that there was evidence of a sinister intent—of fraud, in fact—in that case. The dictum, "that the purchase by a trustee carries fraud on the face of it," never was a rule in equity. The assumption is contradicted by every authority cited in the opinion. In *Prevost* v. *Gratz,* 1 Pet. C. C. R. 368, Mr. Justice Washington says:

"The trustee can never purchase or hold the property discharged of the equity of the *cestui que trust* to call upon him, in a reasonable time, to account for the profit or to have a resale. The purchase, however, by the trustee, is not absolutely void, but voidable at the election of the *cestui que trust,* if he is dissatisfied with it, and in a reasonable time after a knowledge of the fact impeaches its validity."

The case of *Mackreth* v. *Fox,* 2 Bro. C. R. 410, is referred to, but sustains no such proposition. The language of the note at the foot of page 410, and which was particularly cited, is that "Mackreth lost the character of trustee when he became a purchaser of the estate."

The doctrine is clearly stated by the Master of the Rolls, in *Campbell* v. *Walker,* 5 Ves. 60, where he said :

"I take the result of the evidence in this case to be that this was a *bona fide* sale, liable to be impeached only from the circumstance that the purchasers were trustees, and then it is a very important question.

"Plaintiffs insist that according to the principle which has prevailed in these cases, the *cestui que trust* has a right to put an end to this sale ; and I am of opinion the rule of the Court goes to this extent.

"I will lay down the rule as broad as this, and I wish trus-

tees to understand it, that any trustee purchasing the estate is liable to have his purchase set aside, if, in any reasonable' time, the *cestui que trust* chooses to say he is not satisfied with it.

" The trustee purchases subject to that equity, that if the *cestui que trust* come in a reasonable time, they may call to have the estate resold.

" They must buy with that clog.

" I perfectly agree with the Lord Chancellor, in *Whichcote* v. *Lawrence*, 3 Ves. 740, it was a perversion of the rule to say no trustee should buy. There never was such a rule."

I think it must be regarded as well established law, that a purchase by the trustee is not necessarily fraudulent in fact, and that the right of the *cestui que trust* to put an end to the sale by bill in equity is not assignable. Upon the supposition, however, that by the conveyance from Mary Hina to appellant, the latter became vested with all her rights, both legal and equitable, the Statute of Limitations would, nevertheless, interpose an immovable barrier against any recovery.

The first aspect of the case, as presented by the bill, is that of fraud in fact. Assuming the charge to be true for the sake of the argument, the seventeenth section of the Statute of Limitations expressly applies; and the lapse of three years from the date of the "discovery by the aggrieved party of the facts constituting the fraud," constitutes a bar. The application of the statute in this State to suits in equity is not left to the discretion of the Court. When, by its own express terms, the Statute of Limitations is made applicable alike to actions at law and to suits in equity, its provisions are equally imperative in both. (*Farnam* v. *Brooks*, 9 Pick. 242 ; *Johnson* v. *Ames*, 11 Id. 182 ; *Bacon et al.* v. *Howard*, 20 How. 25 ; *Lord* v. *Norris*, 18 Cal. 487.)

Touching the second ground of relief, however, it is said by appellant's counsel that, as between trustee and *cestui que trust*, the Statute of Limitations does not apply. It is admitted that where there is an express passive trust, where the trustee holds the legal title to the use of another without any action on his part, or he is to execute the trust by collecting and

applying the rents, or by a conveyance of the legal estate to some particular person, as a general rule the statute cannot run.

Again, where the trust is. to be executed by a sale of the land to the highest bidder, there can be, as a general rule, no adverse holding until after a sale and conveyance actually takes place.

By a sale, however, the trust, being executed, is, as to the land itself, extinguished, and attaches to the proceeds until they are paid over, or otherwise properly applied or accounted for. If the trustee becomes directly or indirectly the purchaser, the *cestui que trust* cannot pursue the lands and proceeds of the sale both. He can charge the trustee as to either, at his election. From the time of the purchase by the trustee, however, he becomes an adverse holder. Such assertion of an adverse title on his part *is an open, unequivocal repudiation of the trust.* But unless the *cestui* chooses to abide by the sale, he can come into equity and demand a resale of the land, or where it is practicable, refund the proceeds and claim a conveyance. A right of action has then accrued to him, against which the Statute of Limitations will commence running. The doctrine that the statute does not run against the *cestui que trust* is founded on the ground that the possession by the trustee is not inconsistent with his right and interest, *and does not apply where the trustee actually holds adversely.* (*Boone* v. *Chiles*, 10 Pet. 223; *Avery* v. *Holland*, 2 Overton, 71; *Wilson* v. *Watkins*, 3 Pet. 51, 52.)

A purchase by the trustee, Sheriff, or other party charged with the sale of property, is not, *per se*, fraudulent in fact. So held in *Dobson* v. *Racey*, 3 Sandf. C. R. 63, where it is said, " The law declares the sale unwarrantable on grounds of public policy, irrespective of any proof of injury or intentional wrong." In *Ward* v. *Smith*, Id. 597, where the administrator had purchased at a sale under the Surrogate's order, it was admitted by the Vice Chancellor that there was no evidence of intentional fraud, holding that the deed was not void, but voidable at the instance of the heirs. In *Van Epps* v. *Van*

*Epps*, 9 Paige, 241, 242, it is said, that " In cases of this kind, the Court does not suffer itself to be drawn aside from the application of the equitable rule by any attempt on the part of the purchaser to establish the fairness of the purchase." In *Torry* v. *Bank of Orleans*, 9 Paige, 664, the Chancellor remarked, that " Whether Lot No. 182 was or was not worth more than the amount of the agent's bid, is a matter of fact which is never inquired into in such cases ;" declaring that .the sale is to be set aside in all cases if application be made in due time.

By the Court, Rhodes, J.

This action was brought to establish and enforce a trust in favor of the plaintiff, as the grantee and assignee of Mary Hina, the heir at law of Jack Hina, deceased, as to certain premises, that the defendant purchased at his own sale as administrator; and as incidental to the relief sought in respect to the alleged trust, the plaintiff prayed for an account of the rents and profits, and for the delivery of the possession of the premises.

The mortgage executed by Jack Hina in his lifetime, which it is alleged the defendant fraudulently procured to be assigned and foreclosed, and the sale and conveyance of the premises which it is alleged were fraudulently made for the benefit of the defendant, may be dismissed from consideration except so far as those matters bear upon the question of fraud in procuring the order of sale from the Probate Court, as the legal title, which was then in Mary Hina, was unaffected by those proceedings, because she was not made a party to the foreclosure suit. The questions we shall first consider, grow out of the fact charged by the plaintiff, and found by the Court below, that the defendant, while acting as one of the administrators of Jack Hina, deceased, purchased the premises *per interpositam personam* at his own sale, which he made under the order of the Probate Court. It is alleged in the complaint that the proceedings in the Probate Court, for the purpose of procuring the sale, and the sale itself, and all pro-

ceedings connected therewith, are wholly fraudulent and void. The plaintiff's counsel, however, contends that the sale is void only at the instance of the *cestui que trust*—that is to say— that the sale is voidable. His position is that Blankman, in selling the property as administrator, acted as the trustee of the heir; that his sale to himself did not discharge the trust; that the heir, as the *cestui que trust*, possessed the ·right to affirm or disaffirm the sale, and that such right was incident to the equitable estate which she possessed in the property. The defendant's position is that the sale was voidable only at the election of the heir, and coupled with that, is the further position that by the sale she became divested of every assignable right or interest in the land.

*Effect of purchase, by an administrator, at his own sale, made by order of the Probate Court, of land belonging to the estate.*

We may say here, that we cannot assent to the latter position of the defendant. If it is admitted that anything passed by the sale, it must be conceded that the legal title passed; and after the administration is closed it would be difficult to charge the defendant as trustee in respect to the real property, unless he was vested with the legal title; but in regard to the equitable title, we are of the opinion that Mary Hina, by her deed to the plaintiff, gave evidence of her determination to disaffirm the sale; that at the time of its execution she held the equitable title as fully as before the sale, and that by her deed she conveyed such equitable title to the plaintiff. And it admits of serious doubt whether the sale, confessedly in contravention of the rules of equity, even temporarily " set afloat" her equitable interest, so that an act of disaffirmance was necessary in order to attach it again to the property. There are strong reasons for holding that upon a sale of this character, the relation of the *cestui que trust* is not, by that fact alone, shifted from the property to the proceeds of the sale, but that, in order to cut her off from any recourse upon the land, and restrict her to the proceeds, there must be either some positive act of affirmance of the sale, or such an acqui-

escence in it, manifested by the receipt of the proceeds, or by a delay beyond the period fixed by the Statute of Limitation, in commencing proceedings to set it aside, or in some other manner, that the Court will deem it equivalent to, and presumptively a ratification of the sale. By her disaffirmance, she elects to have the legal title held as it was before the sale, and have the property remain subject to all the trusts with which it was formerly charged. In the absence of a disaffirmance, that is to say, of an assertion of her interest in the land within a reasonable time, the equitable interest of the *cestui que trust* is presumed to have become united to the legal title, in the hands of the trustee holding adversely to the *cestui que trust.* An illustration may be found in the case of a will, that gives to any legatee a portion of the estate of the testator, and to another legatee some of the first legatee's property. The will, of itself, does not divest the first legatee of any title to his own property, but his affirmance of the disposition made by the will, manifested by his election to take under it, is held in equity to pass his interest in what was his own property, to the second legatee; and if he relies upon his right, independent of the will, it cannot be said that he was at any time even temporarily divested of the title to his property that was attempted to be bequeathed. The right of election in the *cestui que trust* to affirm or disaffirm the sale must have for its support some interest in the premises sold. He cannot acquire the equitable title by mere assertion, nor can it with much show of reason be said, that by indicating his election to have the legal title restored to its original status, he acquires any right or title he did not possess before making the election.

*Sale of the trust estate and purchase of same by the trustee who holds the legal title.*

In a case where the trustee holds the legal title, and the trust is to be executed by a sale of the property for money, and the trustee becomes the purchaser, and holds in his hands the money representing the purchase money, ready to be paid over to the *cestui que trust,* the money evidently is not the

money of the *cestui que trust*, as it would be considered had the sale been properly made to a third person, and it does not become his property until he elects to affirm the sale and receive the money; and if it is true that the purchase by the trustee, divests the *cestui que trust* of his equitable interest in the land, then it follows that there is a time—the time intervening between the sale and the election by the *cestui que trust*—that he owns neither an interest in the land nor the money arising from its sale. Instead of saying, in the language of many of the cases, that the sale, as between the trustee and *cestui que trust*, is good unless the *cestui que trust* elects to avoid it, is it not more accurate to hold that the sale will become good, unless the *cestui que trust* elects to avoid it, before its ratification may be presumed from the lapse of time or other sufficient circumstances?

*Is the purchase, by an administrator of the land of the estate, at his own sale, void or is it merely voidable?*

Is the sale void, or is it merely voidable? The doctrine that a purchase of the trust property, by a trustee for sale, made at his own sale, whether the purchase is affected by himself or through the interposition of another person, is voidable at the election of the *cestui que trust*, is as firmly established, and is supported by as clear and satisfactory reasons, as any rule in equity. Both parties hold that it was only voidable, and yet the question is involved in much perplexity, and when tested by the rules applicable to such cases, some doubt still remains. An administrator is the creature of the statute. He has no existence independent of the statute, and in taking upon himself the duties and trusts created by it, he assumes them with all the clogs and restrictions the statute has attached to the office. Those restrictions may be other or greater than those controlling persons acting under private appointment, in a capacity very analogous to that of an administrator, but the person accepting the trust, takes it not only with the powers,

but with disabilities incident to the position. Among the restrictions is that contained in section one hundred and ninety-three of the Probate Act, that "no executor or administrator shall, directly or indirectly, purchase any property of the estate which he represents." This provision cannot be said to be in affirmance of the common law, for at law it was held that the legal title did pass by the purchase of the trustee, effected through the agency of a third person at the trustee's sale of the property, and it was only in a Court of equity that the sale was held not to pass the title. (*Jackson* v. *Van Dalfsen*, 5 John. 43; *Davoue* v. *Fanning*, 2 John. Ch. 252.) Regarding the section as creating a personal disability to take property—as depriving him of the power and capacity to receive and hold the title for any purpose, it would seem impossible to escape the conclusion that the sale would be absolutely void. A conveyance made by the administrator to himself is *ipso facto* void, without regard to section one hundred and ninety-three, for it bears its own invalidity upon its face. But the conveyance to a third person after a sale to him, and a confirmation of the sale, although secretly made for the use of the administrator, gives such person a *prima facie* title to the land, and the invalidity of the title is made to appear, upon the fact being ascertained and determined in the proper Court, that the purchase was made by the administrator *per interpositam personam*. Before that fact is determined there would seem to be but little if any doubt that the third person who had taken the title for the administrator could pass it to a *bona fide* purchaser for a valuable consideration, without notice of the fraudulent purchase. It is true that if the sale is held to be absolutely void, he could not pass the title to an innocent purchaser; but the rules of equity, which were devised to protect the *bona fide* purchaser as well as the *cestui que trust*, would forbid that result, if it could be avoided consistently with the statute. The grantee of the purchaser at the administrator's sale, after having made all the inquiries that could be required of a prudent man, might be at the mercy of a fraudulent conspiracy between the persons

interested in the administrator's sale, resulting in the proof
that the sale, that had in truth been made to the purchaser
named, was in fact made to the administrator, through the
intervention of the nominal purchaser. On the other hand,
the *cestui que trust*, if the administrator in fact purchased at
his own sale, has several remedies which may afford him ade-
quate relief. He may have the sale set aside and the adminis-
trator declared a trustee; he may sue upon the administrator's
bond, or he may proceed to recover the penalty of double the
value of the land sold, according to section one hundred and
eighty-nine of the Probate Act.

A conveyance cannot be said to be utterly void, unless it is
of no effect whatsoever, and is incapable of confirmation or rat-
ification. The acceptance of the purchase money, with full
notice that the administrator was the purchaser, *per interpos-
itam personam*, would unquestionably amount to a ratification
of the sale. The Court would not countenance a partial dis-
affirmance of the sale, that would enable the *cestui que trust*
to hold on to the purchase money, and at the same time
recover the land. (*Terrell* v. *Auchauer*, 14 Ohio, 80.)

It is said by Mr. Chief Justice Spencer, in *Anderson* v. *Rob-
erts*, 18 J. R. 528, "Whenever the act done takes effect as to
some purposes, and is void as to persons who have an interest in
impeaching it, the act is not a nullity, and therefore, in a legal
sense, is not utterly void, but merely voidable. Another test
of a void act or deed is, that every stranger may take advan-
tage of it, but not of a voidable one." It is not declared by
the statute that the purchase by the administrator is utterly
void, but if it is held that the prohibition against his purchas-
ing amounts to that, in effect, it does not necessarily follow
that strangers can allege that the sale is void.

The statutes of the 13th and 27th Elizabeth, and the stat-
utes of the States having the same general purpose, declare
that sales, etc., made to hinder, delay, or defraud creditors
shall be absolutely void, and the cases both in England and the
United States holding that those sales are void only at the
instance of the parties injured, are too familiar and numerous to

require citation. In *Greene* v. *Kemp*, 13 Mass. 515, the purchaser of the equity of redemption attempted to set up and rely upon the statute declaring that mortgages, etc., tainted with usury, were "utterly void," for the purpose of defeating a recovery of the possession of the mortgaged premises by the mortgagee, who had foreclosed, but the Court held that the mortgage was merely voidable, and that as the defendant was a stranger to the mortgage transaction, and possessed no title in the land, but only a right to redeem, he could not rely upon that defense, and that only the mortgagor and those who may lawfully hold the estate under him could set up the usury. (See, also, *Jackson* v. *Henry*, 10 John, 195; *Dix* v. *Van Wyck*, 2 Hill, 522.)

An examination of the Probate Act will disclose the intent of section one hundred and ninety-three; and it is apparent that the object was not to declare who might or who might not become a purchaser of the property of the estate; but it was to prevent the property from being sold at a price less than its true value, which might be the case if the administrator, either directly or indirectly, prevented competition among the bidders, by entering into the market, either personally or by his agents, or if, with a view of purchasing, he was tempted to undervalue the property in his proceedings respecting the sale. The protection to the estate designed by that section, can be as fully secured by permitting the parties interested in the estate to set the sale aside and have the administrator declared a trustee, as it would be to construe the section so as to allow strangers to impeach the sale, with the consequent risk to the *bona fide* purchaser, without notice, from the administrator's agent, of losing the premises he purchased, relying on the apparent regularity of the probate proceedings and the confirmation of the sale.

The terms void and voidable are not always employed, either in the statutes or reports, with strict legal accuracy, but we find no case which, when critically examined in connection with the character of the action and the facts of the case, holds sales made in the face of a prohibition, such as is

found in section one hundred and ninety-three, to be utterly
void. Many cases are found in which the *cestui que trust* or
his heirs have sued to set aside the sale, or to have the trust
established and declared, and in those cases the Courts have
said that the sales were void, or were fraudulent and void ;
that is to say, that when the *cestui que trust*, or those claiming
title under him, manifest their election to disaffirm the sale,
and commence a suit to set it aside, the Court pronounces the
purchase by the trustee at his own sale void as against the
*cestui que trust*, and sets it aside and declares the trustee still
a trustee, and orders a new sale, or affords such other relief as
the exigencies of the case demand. Such was the case of
*Michoud* v. *Girod*, 4 How, 503, which was a suit in equity,
by certain heirs of a deceased testator, against the legal rep-
resentatives of one of his executors, who was also one of the
heirs, to obtain the complainants' just share of the estate of
the testator. The two executors had purchased the property
of the testator through an agent, and one of the executors
purchased of his co-executor his half of the property ; and the
executor who held all the property having died, the suit was
brought against his legal representatives. It will be seen that
there were no " strangers " to the transaction among either of
the parties. The complainants alleged that the sales were
fraudulently made, and the defendants denied fraud in fact or
intention on the part of the executors, and alleged that the
sales were judicially ordered and conducted, that the pur-
chases were rightfully made for a fair price and at public
auction. The Court held that it would not in such a case
enter into an investigation as to whether there was fraud in
fact, or whether the sale was for a fair price and made at pub-
lic auction, but that upon its being made to appear that the
trustee had purchased at his own sale, the Court would set
the sale aside as fraudulent and void, as against the *cestui que
trust* without further inquiry. The language employed by
Mr. Justice Wayne in delivering the opinion of the Court is
comprehensive enough to express that the sale was absolutely
void, but that point was not involved in the case, for if the

sale was held to be fraudulent and void at the instance of the *cestui que trust*, that disposed of all the questions arising upon that branch of the case, and, as we have remarked, there were no strangers to the transaction before the Court, but as plaintiffs, only some of the heirs of the testator and the representatives of other of the heirs; and as defendants, the representatives of one of the executors. That the Court did not intend to go further than to hold the sale voidable, appears from the fact that the rule as to the disability to purchase, cited from Sir Edward Sugden, is, in the language of the Court, "the rule as to persons incapable of purchasing particular property except under particular restraints, on account of the rules of equity," and according to those rules the sale was merely voidable; also from the fact that the cases cited by the Court, among which *Davoue* v. *Fanning*, 2 John. Ch. 252, is relied on as a "critical and able review of the doctrine, as applied by the English Courts of Chancery from an early day, and has been received with very few exceptions by our State Chancery Courts, as altogether putting the rule upon its proper footing," hold that those sales are merely voidable; and from the further fact that Court proceeded to set aside the sale complained of, which was a useless proceeding if it was absolutely void.

*Hardy* v. *De Leon*, 5 Texas, 211, appears, by a series of amendments, to have been converted from an action to recover the possession of the premises, into a suit in equity to set aside a certain tax sale and an administrator's sale, which had been procured by the fraudulent combination of the defendants. The plaintiffs were the heirs at law of De Leon, deceased, and the defendants were the administrators of De Leon and the purchasers at the tax sale and the administrator's sale. The person who, it was alleged, purchased and took the title for the administrator, and who still held the title, was made a defendant. No other person than the administrator and the purchasers were made defendants, and consequently the question whether the sale was absolutely void did not arise. On this subject the Court limit their remarks to one short paragraph and say that " a person cannot be both buyer and seller

at the same time;" and after stating the rule on that subject as given by Chancellor Kent, (4 Kent, 5 Ed. 438,) say: "It therefore was not error to instruct the jury, in effect, that a purchase made by a Sheriff or an administrator at his own sale is deemed fraudulent in law, and that a fraudulent sale is void. *Prima facie*, the sale so made was void, and there do not appear to be any circumstances in the case requiring the Court to consider the qualifications to which the rule may be subject." No statute is mentioned that prohibits such a sale, and the rule referred to was the rule in equity, and was not the rule at law, except in case where the sale was made by the administrator directly to himself, which would be void on its face, because there would be but one party to the nominal contract; and as the case called for no expression of opinion whether a sale by the administrator to himself, through the agency of a third person, was a complete nullity, we think the language, that the sale "is deemed fraudulent in law," was inadvertently used, the Court merely intending to declare that the sale was fraudulent and void at the election of the heirs of the deceased. That such was the meaning of the Court, is very manifest, for Chancellor Kent, in immediate connection with the passages cited by the Court, says: "It may be here observed, as a general rule applicable to sales, that where a trustee of any description, or any person acting as agent for others, sells a trust estate, and becomes himself interested, either directly or indirectly, in the purchase, the *cestui que trust* is entitled as of course, in his election, to acquiesce in the sale or to have the property re-exposed to sale, under the direction of the Court," etc.

We have very clear and pointed authority on this question in the case of *Terrell* v. *Auchauer*, 14 Ohio State R. 80. It is provided by the statute of Ohio that "no Sheriff or other officer making the sale of property, either personal or real, nor any *appraiser* of such property, shall either directly or indirectly purchase the same; and every purchase so made shall be considered fraudulent and void." The defendant, who had been one of the appraisers of the land at a foreclosure sale, pur-

chased the land, received a deed, and went into possession. The plaintiff, who claimed under a deed of trust, brought an action to recover the possession of the land. The Court say, in substance, that the mischief which the statute aims to prevent is obviously that which arises from fraudulent appraisements, made with a view to the individual advantage of the appraiser, when he becomes a bidder at the sale, and that the mischief is as effectually prevented by holding the sale to be voidable at the option of the parties interested, on a proceeding for that purpose, as it would be by holding it to be an absolute nullity; while the injurious consequences may be avoided which would often follow if the sale be held to be strictly void. We attach far less force to the argument of the Court in that case, drawn from the construction of the word " considered " in the clause of the Act declaring that " every purchase so made shall be *considered* fraudulent and void," as indicating that the purchase shall be held void when so adjudged by the Court, in a proceeding to avoid the sale, than we do to the other reasons advanced by the Court, and particularly those supported by the cases cited—(*The King* v. *The Inhabitants of Hipswell*, 8 B. and C. 471 ; *Pearse* v. *Morris*, 2 A. and E. 94 ; and *Anderson* v. *Roberts*, 18 John. 529)—holding that the word " void " will be construed as " voidable " when the provision is introduced for the benefit of the parties only, and not for public purposes, and to protect those who are incapable of protecting themselves.

We are of the opinion that by holding the sale to be void at the election of the heirs or other persons interested in the estate, the mischief intended to be prevented by the statute will be obviated, and at the same time those who, in good faith and without notice of the constructive fraud of the administrator, have acquired the title through the agent who purchased the property for the use of the administrator, will be protected from losses, which otherwise could only be effectually provided against by an utter refusal to purchase property that had been sold at an administrator's sale.

*Fraud by an administrator in procuring an order of sale of land with-out necessity.*

Actual fraud is alleged and relied on by the plaintiff, and he assigns as error the finding of the Court against him on that issue.   The fraud complained of, stated generally, consisted in the administrator's having procured an order of sale from the Probate Court, when there was no necessity for it.   He represented in his petition, filed December 18th, 1850, that the estate was indebted seven hundred and seventy dollars on the Biron mortgage, and about two hundred dollars for other debts, and that the personal property was insufficient to pay the debts and the expenses of administration.   His final account, filed April 2d, 1851, shows that on the 23d of October, 1850, he received from Mary Hina eight hundred and ninety dollars on account of the estate. Instead of applying the money to the satisfaction of the mortgage, he purchased it in the name of Bidleman, for his own benefit.   Doubtless the interest for two months—one hundred and forty dollars—was paid out of the money paid to him by Mary Hina.   So far as the order of sale is concerned, and the fraud imputed to the defendant in procuring it, without any necessity, it would make no difference whether he left the mortgage unpaid in Biron's hands or caused it to be assigned to himself or to some third person for his use, for he having the funds in his hands, that might and ought to have been applied to the satisfaction of the mortgage, he should have taken the necessary steps to have procured an order that the funds in his hands be applied to that purpose ; and the wrong consists in the fact that he procured an order of sale to raise money to satisfy a debt, which either had been paid or ought to have been paid out of moneys in his hands belonging to the estate.   The administrator was without justification, so far as appears from the evidence, in procuring an order of sale to raise means to pay that debt.   The payment might have been made soon after the receipt of the money in October, and at

that time the payment of the mortgage and two months interest, requiring eight hundred and forty dollars, would have left in his hands fifty dollars. It is not charged, nor does it appear in the case that any of the property of the estate except the sum of eight hundred and ninety dollars and the lot in controversy, came to the possession of the defendant, and we may presume that the articles included in the inventory under the items " stoves, chairs and household furniture, two hundred dollars; trunk and clothes, one hundred dollars," remained in the possession of the widow of the deceased; and it is not alleged that they came to the defendant's hands. At the time of filing the petition for sale, there had been allowed the claims of appraisers and others, amounting to two hundred and ten dollars, and although the claims may seem exorbitant, yet they had been allowed by the Probate Judge as well as the administrator; and, as valid claims against the estate, they, together with administrator's fees, accruing and accrued, were required to be paid; and the administrator, not having funds in his hands sufficient for that purpose, was authorized and it was his duty to have raised the required funds out of the real estate by sale or otherwise. A sale of a small portion of the real estate would probably have been sufficient; but the Probate Court had jurisdiction, and we think the exclusive jurisdiction to determine what portion of the real estate should be sold for that purpose; and although the Court may have erred in that respect, its judgment cannot be revised or set aside in this collateral manner. The error can be reached only by an appeal taken directly from the order of that Court.

And the same may be said in respect to the order of sale, so far as it is founded on the alleged indebtedness on the mortgage, conceding that it had been paid (considering the assignment to Bidleman for the defendant as a payment by the estate, or as vesting the mortgage in the estate,) or that it was not a subsisting claim against the estate, or that it ought to have been paid by the administrator, still those were facts to have been proven before the Probate Court, on the hearing of the petition for sale. It is manifest that it was quite suscepti-

ble of proof, that the administrator had in his hands funds that should have been used for that purpose, and if those interested in the estate failed to offer the evidence they are in default; and if it was offered and was rejected by the Court, or having been received, the Court, notwithstanding the evidence, ordered the lot to be sold for the payment of the mortgage, it was error which might have been corrected on appeal; but if not so corrected, was final and conclusive upon the parties to the petition.   The fraud, then, in procuring the order of sale, so far as the mortgage debt is concerned, amounts to this: that the administrator procured an order, either upon insufficient evidence, or contrary to the evidence that was accessible to the heir at law, and was or might have been introduced by her, which, instead of being a fraud of which another Court will take cognizance, is but the case of an error in the judgment of the Probate Court, or of neglect on the part of one of the parties to present his case; and we agree with the learned Judge of the Court below in his finding, that there was no actual fraud in procuring the order of sale, and in holding that in relation to the necessity or the sale, the plaintiff is concluded by the order declaring that it was necessary, and directing it to be made.

*Ignorance as a ground of relief in equity.*

It is proper to remark here that we do not concede as much force and consequence, as do the counsel for the plaintiff, to the fact that Mary Hina was an ignorant Kanaka woman, unacquainted with legal proceedings and almost ignorant of our language.   We cannot obliterate the recognized rules of law, requiring of all persons the diligence and attention demanded of a prudent man in the transaction of his own business, and establish a measure of care and diligence for each particular case.   If she did not understand the value of the receipt she said Blankman gave her for the money she paid him, or if she did not comprehend the meaning or the object of the petition for sale, unless it is also proven that she relied upon Blankman for information respecting those mat

ters, and that he misrepresented them, her ignorance of their objects, value and meaning, affords no grounds for relief.

### Statute of Limitations.

The defendant relies on the Statute of Limitations as a defense to the action. The statute is applicable alike to all causes of action—to a cause of action in equity as well as one at law. The statute governing this case, is found in the fourth subdivision of division third of section seventeen of the Act concerning the limitations of civil actions, which is as follows : " Within three years * * * an action for relief on the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." The cause of action accrued in 1851, the date of the purchase by Reis for the defendant at his sale as administrator. The defendant in his answer says " that the pretended cause of action in said complaint set forth, did not accrue at any time within five years next before the commencement of this action, and he sets up and relies upon the statute in such case made and provided in bar of said action, as if herein specially pleaded." The plaintiff in his replication denies " that the pretended cause of action in said complaint set forth did not accrue at any time within four years next before the commencement of this action ;" and for a further replication he says " that the several acts of fraud set forth and alleged in said complaint were not discovered by said Mary Hina or this plaintiff until within three years next preceding the commencement of this action." The Court found " that the knowledge that the purchase of said premises at the probate sale, and at the foreclosure sale were made, and the lands held thereunder for the benefit of, and in trust for the defendant Blankman, did come to Mary Hina more than five years before the commencement of this action." As the acts constituting the fraud complained of are alleged to have been committed more than three years before the commencement of the action, the complaint should have stated the discovery of them within the three years, (*Sublette* v. *Turner*, 9 Cal. 423,)

but as the discovery within the three years is averred in general terms in the replication and the issue thereupon was tried without objection in the Court below, the finding will be taken as if made upon an issue properly raised by the pleadings.

It is objected that the defendant has not set up the particular Statute of Limitations applicable to cases of this nature, and that in order to avail himself of the benefits of any of the provisions of the statute, he should have pleaded all the statutes upon which he intended to rely, in separate defenses.

The defendant, relying for answer upon any provision of the Statute of Limitations is not required, nor do the rules of pleading permit him to allege matter of law. The facts are required to be stated which bring the case within the operation of the statute, and the Court will apply to them the law. To an action of ejectment the defendant pleads that the cause of action did not accrue within ten years next before the commencement of the action. This, though negative in form, is in fact an affirmative answer, and is in effect an averment that the cause of action accrued more than ten years before the commencement of the action. When tested by a demurrer, it will be found to be sufficient, for if it accrued more than ten, it must have accrued more than five years, next before the commencement of the action. The nature of the action, not the allegations of the defendant, will determine what statute is applicable as a bar to a recovery.

When the defendant demurs on the ground of the Statute of Limitations to a complaint, on the face of which it appears that the cause of action accrued anterior to the longest period prescribed as a bar, the demurrer is sustained, not because the complaint states as the time when the cause of action accrued, any period, the time from which to the commencement of the action, corresponds with the time prescribed in any particular statute as a bar, but because the time as stated since it accrued exceeds the time defined as a limitation of actions of that nature. If the plaintiff fails to state truly one of the essential parts of his cause of action, to wit: the time when it accrued —which, if stated, truly would show that he had no subsist-

ing cause of action, it is impossible to see why the defendant may not aver the truth in that respect, and if it is established on the trial, secure the same result.

The Court below found that the knowledge that the purchase of the premises at the probate sale was made for the benefit of and in trust for the defendant, came to Mary Hina more than five years before the commencement of this action, and the plaintiff complains of the finding on the ground that it was unsupported by the evidence. The defendant contends that the saving clause of section seventeen of the Statute of Limitations is applicable only to actions founded on fraud in fact. The rights of a party seeking relief on the ground of constructive fraud in an action cognizable only in equity, were conserved until a discovery by the aggrieved party, of the facts constituting the fraud, and as the Statute of Limitations is now applicable alike to all causes of actions, it would be but reasonable to hold that parties should have the benefit of the saving clauses of the statute in that class of cases as well as those that were formerly within the statute, if it can properly bear that construction; and as neither the limitation nor the saving clause is confined to cases of actual fraud, we see no reason for giving the statute the restricted construction claimed for it by the defendant.

The evidence in the record fails to show a discovery by Mary Hina of the fact constituting the fraud—that is, of the purchase of the property by the defendant, *per interpositam personam*, at his own sale—within three years next before the commencement of the action; nor does it appear that the facts actually or presumptively within her knowledge were sufficient to have put her, as a person of ordinary intelligence and prudence, upon inquiry. She is chargeable with knowledge of the state of the account between the defendant and the estate; of the petition for sale and the orders and proceedings thereon, and of the conveyance to Reis; and it may be conceeded for the purpose of this question that she knew that the defendant, instead of satisfying the Biron mortgage, procured it to be assigned to Bidleman, who foreclosed it and

purchased the premises for the defendant's use at the fore-
closure sale; that Reis conveyed the premises to Bidleman,
who afterwards conveyed them to the defendant; that she
believed, when she was turned out of possession by the Sheriff
under the writ issued upon the judgment in ejectment recov-
ered against her by Bidleman, that she was dispossessed by
the defendant; and that she consulted counsel, or attempted
so to do, about recovering the lot from the defendant. But
all these facts are consistent with the apparent fact that
Reis purchased in good faith for his own use, and they were
not sufficient to put her upon inquiry as to the true character
of his purchase. The fact that she cherished her claim to the
lot and intended, at some time, to institute proceedings for its
recovery from the defendant, falls short of proving that she
knew, or had any intimation of the capacity in which Reis
acted in making the purchase. The respondent's counsel
admits that Mary Hina may not have discovered for a time
that the respondent became the purchaser through the inter-
vention of another; and we are unable to find any evidence
in the record tending to show that she afterwards made the
discovery or was put upon inquiry, until her conversation with
Bidleman in 1861.

Judgment reversed and cause remanded for a new trial.

Mr. Justice CURREY and Mr. Justice SAWYER being disqual-
ified, did not sit in the cause.