# THE SUPREME COURT

OF THE

## STATE OF NEVADA.

## JANUARY TERM, 1881.

[No. 1,034.]

### THADDEUS B. ROYCE, APPELLANT, v. J. C. HAMPTON, ADM'R, ETC., ET AL., RESPONDENTS.

EQUITABLE RELIEF—NEGLIGENCE.—Courts of equity will not grant relief to a party who has had an opportunity to be heard in a court of law without a showing that he was prevented from being heard by the wrongful acts of the prevailing party, unmixed with any negligence or fault on his part.

IDEM—MISREPRESENTATIONS.—Courts of equity will not grant relief to a party upon the ground of misrepresentations made to him, unless he shows that he relied and acted upon them believing them to be true.

IDEM—DECREE OF DISTRIBUTION—LACHES OF CLAIMANT—POVERTY NO EXCUSE.—Where a claimant has knowledge of the proceedings for the settlement of an estate, of the time fixed for a decree of distribution, that the estate is valuable, that his claim of relationship is denied, that the administrator failed to answer his letters, and where all the proceedings were regular and legal in form and without any fraud, concealment, or misrepresentation: *Held*, that the fact that the claimant was in delicate health and in poor circumstances is not sufficient to excuse him from making an effort to appear in the proceedings and assert his rights.

ESTATES OF DECEASED PERSONS—DUTY OF ADMINISTRATORS.—Administrators should be held to the utmost good faith and strict performance of official duty. They are, however, mere creatures of the statute, and are only bound to perform such duties as are imposed upon them by the law.

IDEM.—Where the decree of distribution is not made upon the petition of the administrator, he is not bound to notify the court that there are other parties, besides the petitioner, who claim to be heirs of the estate.

Statement of Facts.

IDEM—DUTY OF PETITIONER.—It is the duty of the petitioner for a decree of distribution to inform the court as to all heirs of the estate entitled to share in the distribution thereof; but when petitioner claims to be the sole heir of the estate, and regularly pursues the course required by the statute in giving notice, etc., he is not guilty of fraud upon the court, because he does not state the names of other parties who claim to be heirs of the estate.

SUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS.—The evidence reviewed and held to be sufficient to support the findings that plaintiff "was guilty of negligence and laches which are unexcused."

APPEAL from the District Court of the First Judicial District, Storey County.

The findings referred to in the opinion of the court are as follows:

19. "That for upwards of five months before the said decree of distribution was made, plaintiff suspected that said William John Ford and defendant (J. C. Hampton) intended to cheat him (plaintiff) out of the estate of said Oliva Rosanna Ford, and knew that said William John Ford claimed that plaintiff was no relation to him (Ford)."

20. "That said plaintiff knew, before the nineteenth day of October, 1875, that said estate of said Oliva Rosanna Ford was in process of settlement and distribution, and was about to be distributed in said district court, but never appeared, or offered to appear, or made any effort to appear, either in person or otherwise, in said estate proceedings, or any of them, in said district court."

22. "That plaintiff was not prevented from taking, and did not fail to take, steps to appear in said district court, in said estate matter and proceedings, by reason of any representations whatever, by letter or otherwise, of said J. C. Hampton, defendant herein, as administrator or otherwise, or said William John Ford; and plaintiff did not appear, or take steps to appear, in said estate proceedings, in said district court, by reason of any concealment practiced by said J. C. Hampton or said William John Ford, touching the value of the estate of said Oliva Rosanna Ford, or of any of the proceedings therein in said district court."

26. "That plaintiff knew it to be his duty to be repre-

sented by counsel or to appear in person in said estate proceedings in said district court, and has failed to excuse his negligence for not appearing, or being represented therein."

27. "That plaintiff did not rely or act upon any of the representations concerning the value of the estate of said Oliva Rosanna Ford made to him by said William John Ford or J. C. Hampton, as administrator, or otherwise."

*Lewis & Deal*, and *J. H. Graham*, for Appellant:

I. The scope of inquiry by courts of chancery as to what constitutes fraud is much broader than that of courts of law, nor are they hampered by the inflexible rules which circumscribe the investigations of the latter. Any element of unfair dealing, any unconscionable advantage obtained, any deception practiced, any concealment of a fact which should in good conscience be revealed, the mental and other conditions of the parties, the relationship of the parties to each other, are all matters which will be considered by a court of chancery in determining whether fraud has been committed. (Kerr on Fraud and Mistake, 43, 44; Freeman on Judgments, sec. 486; *Reigal* v. *Wood*, 1 Johns. Ch. 402; 2 J. J. Marsh. 405; 17 Barb. 202; 1 Story's Eq. Jur., secs. 119, 122, 135, 140, 146, 147, 222, 234, 323, 439; 9 Pick. 113–125; 2 Perry on Trusts, sec. 924; 1 Stock. 246; 5 Ire. Eq. 123; 7 Eng. Ch. 200; 15 Id. 331–332; Lewin on Trusts, 330, 331; 6 Miss. 365; 6 J. J. Marsh. 258.)

II. There is nothing in our constitution or laws making the probate jurisdiction exclusive. When such is not the case, courts of equity have always interfered when fraud has been perpetrated or undue advantage has been taken. (*Clarke* v. *Perry*, 5 Cal. 59; *Wilson* v. *Roach*, 4 Id. 362; *Deck* v. *Gerke*, 12 Id. 433; *Griggs* v. *Clark*, 23 Id. 429; *Wright* v. *Miller*, 1 Sanf. Ch. 103–119; 1 Story's Eq. Jur., sec. 531–543; also 184, n.)

III. Under the authorities, the facts of this case clearly constitute such a fraud as will justify setting aside the decree. (*Hoitt* v. *Holcom*, 23 N. H. 535; 4 J. J. Marsh. 491; 13 N. J. L. 26; Smith's Manual, 60; *Heyden* v. *Heyden*, 46 Cal. 340; 3 Green's (N. J.) Eq. 465.) That mere conceal-

ment of a material fact, which it is the duty of a party to make known, constitutes fraud, is borne out by all the authorities. (Smith's Manual, 61; *Belden* v. *Henriques*, 8 Cal. 87; 1 Perry on Trusts, 178; 2 Id. 924; Lewin on Trusts, .336; Willard on Ex. 406.)

IV. The probate act makes it the duty of the executor and administrator to make known to the court all persons claiming to be heirs. (1 Comp. L. 485, 538, 637, 742, 496, 542, 638, 639, 655.) The court is required to appoint an attorney to represent and guard the rights of absent heirs. (1 Comp. L. 641, 644, 717, 740, 742.)

V. In an ordinary action at law the parties must appear and protect their own interests, or they will be chargeable with default. But in probate proceedings it is made the duty of executors and administrators, and also of the court, to protect the rights of all parties claiming an interest in the estate of deceased persons. Nothing can be taken by default; and when absent heirs do not appear it is the bounden duty of the court to appoint an attorney to represent their interests. (Willard on Ex. 406; *Wright* v. *Miller*, 1 Sanf. Ch. 119; *Carneal* v. *Wilson*, 3 Litt. (Ky.) 80, 90, 91; 33 N. Y. 25.)

VI. Royce was not guilty of any laches. The probate act nowhere requires an heir to appear, but on the contrary has made all provisions for the protection of his rights without such appearance. If it was the intention of the legislature to bar all rights when the persons claiming them failed to appear in court under the published notices, why should it have made provision for the protection of the rights of such persons in cases where there is no appearance by them by the giving of special notice, the appointing of an attorney for them, and the requirement that the administrator shall notify the court who the heirs are? It is perfectly manifest that the legislature contemplated the protection of the rights of all persons, whether they appear or not. In this case had Hampton and Ford not been guilty of fraud by concealing Royce's claim from the court, his rights would have been as fully guarded as if he had appeared in person. Unless it can be said that the plaintiff

knew that the administrator was disregarding his duty under the law—that he was committing a fraud on the court—there was no reason why he should make any appearance, because he had the right to believe that his rights would be as well protected in his absence as they would if he appeared in court. Hampton's letter of November, 1875, was calculated to make Royce believe that there was not sufficient property left after the fire to justify him in incurring the expense of an appearance in court, and that of itself should justify the setting aside of a decree. (*Hayden* v. *Hayden*, 46 Cal. 340.) Courts of equity take into consideration the condition of the party, his indigence, bodily and mental condition.

*C. H. Belknap*, for Respondents:

I. When a party has once an opportunity of being heard and neglects to do so, he must abide the consequences of his neglect. A court of equity can not relieve him though the judgment is manifestly wrong. It is a general rule that parties are to be held to the exercise of caution and diligence in the management of their lawsuits, and are not to be allowed a double opportunity of presenting their defenses. A complainant in equity seeking to avoid the effect of a judgment against him at law, must, therefore, always disclose a sufficient excuse for not making his defense in the original action. (Freeman on Judgments, secs. 485, 486, 502; Story Eq. Jur., sec. 1574; *Marine Ins. Co.* v. *Hodgson*, 7 Cranch, 332; *Foster* v. *Wood*, 6 Johns. Ch. 89; *Lansing* v. *Eddy*, 1 Id. 50; *Dobson* v. *Pierce*, 12 N. Y. 165; *Stillwell* v. *Carpenter*, 59 Id. 423; *Smith* v. *Nelson*, 62 Id. 287.)

II. The probate acts of California and of this state are similar, and require that an order of distribution shall be obtained in the same manner as an order for the sale of real estate. (*Boyd* v. *Blankman*, 29 Cal. 19.)

III. The order of distribution was conclusive as to the rights of the parties. (*Loring* v. *Steineman*, 1 Met. 207; *Bates* v. *Ryberg*, 40 Cal. 465; *Estate of Stephen A. Wright*, 49 Id. 550; *Estate of Alfred G. Pritchett*, 51 Id. 568.)

IV. Courts of equity will not relieve parties to whom misrepresentations have been made unless such misrepresentations have been relied upon. (Story's Eq. Jur., 11th ed., secs. 191–200 (a); *Whiting* v. *Hill*, 23 Mich. 405; *Bowman* v. *Carithers*, 40 Ind. 90.)

By the Court, HAWLEY, J.:

The plaintiff, Royce, a brother of Oliva Rosanna Ford, deceased, seeks to set aside a decree of distribution of his sister's estate, made by the district court of Storey county, on the third day of October, 1876, upon the ground of fraud, concealment, and misrepresentation upon the part of J. C. Hampton, who was administrator of her estate, and of William John Ford, her husband, who was by said decree declared to be the sole heir at law of said estate. All of the proceedings in the settlement of the estate were regular and legal in form. The court, before which this cause was tried without a jury, found that there was no fraud, concealment, or misrepresentation upon the part of the administrator, or of the husband of the deceased, and that plaintiff, by not appearing in the proceedings of said estate, "was guilty of negligence and laches which are unexcused." Appellant claims that these findings are not sustained by the evidence.

It is a cardinal principle that courts of equity will not grant relief to a party who has had an opportunity of being heard in a court of law without a showing that he was prevented from doing so by the wrongful acts of the prevailing party, unmixed with any negligence or fault on his part. The general rule is thus stated by Freeman in his work on judgments: "To entitle a party to relief from a judgment or decree, it must be made evident that he had a defense upon the merits; and that such defense has been lost to him, without such loss being '*attributable to his own omission, neglect, or default.*' The loss of a defense, to justify a court of equity in removing a judgment, must, in all cases, be occasioned by the fraud or act of the prevailing party, or by mistake or accident on the part of the losing party, unmixed with any fault of himself or his agent." (Sec. 486.)

1. Does the evidence show that plaintiff was guilty of

negligence and laches which are unexcused? It appears that Mrs. Ford died intestate on the eleventh day of June, 1875; that on the twelfth of July following, J. C. Hampton was appointed administrator of her estate; that plaintiff was advised of these facts shortly after they occurred, and was notified that the estate was worth seventy-five thousand dollars; that the plaintiff, thereafter, wrote four letters to the administrator, dated, respectively, October 19, 1875, November 20, 1875, February 20, 1876, and April 9, 1876, which were received by due course of mail within about one week after they were written, making inquiries about the estate and proceedings therein, and representing himself to be a brother of the deceased; that on the twenty-third of February, 1876, one G. T. Dennis, at the request of plaintiff, addressed a letter to Mr. Hampton; that Hampton answered the first letter written by plaintiff, and the letter written by Dennis, and made no reply to the other letters; that on the fourteenth of July, 1875, Mr. Ford, in answer to a letter received from plaintiff's wife, addressed a letter to the plaintiff and, among other things, said: "Now, Thaddeus, concerning our property, it is in the hands of an administrator. We owe somewhat in the neighborhood of twelve thousand dollars, with two per cent. interest per month, but I think that at the expiration of a year from date everything will be easy with good management, and the debts mostly paid. Rose always wanted to look out for your boys, and God knows that as I loved her, and hope for his love, I will carry out her wishes to the best of my ability. But at the present time nothing can be done until after the time allowed for the administration of the estate by our district court, and things are at present in a muddle on account of not keeping books, which, if they had been kept, would not have been a pressure on her brain while living, nor have given vultures a chance to prey on our estate after her death."

Conceding, for the purposes of this opinion, that the letters written by Hampton, and Ford's letter of July 14, were calculated to mislead the plaintiff and conceal from him the true condition of the estate and of the proceedings had

therein, it becomes necessary to determine whether, as a matter of fact, the plaintiff relied upon these representations. His testimony shows that he did not. Speaking of the value of his sister's estate he says: "I heard from Mrs. Terrill that she was worth about seventy-five thousand dollars;" this was "before her death and after her death." In reply to the question of defendants' counsel, "Did you ever learn anything to the contrary?" he answered: "I did not." If he was mistaken in giving this testimony and had the right to believe from Hampton's letter that his sister's property after the fire of October, 1875, was "a pile of smoldering ruins," still it affirmatively appears that he did not rely upon the letter he received from Hampton, and that he was not misled by the letter of Ford. He admits that he received letters from Mr. Ford after the letter of July 14, stating in substance that he (Ford) did not recognize any relationship between himself and the plaintiff, and requested plaintiff not to call him brother; and that from these letters and from the failure of Hampton to reply to his letters he suspected something was wrong. He says: "I supposed, of course, they were endeavoring in some way to beat me out of the estate my sister intended me to have."

A court of equity will not relieve a party upon the ground of misrepresentations made to him, unless he shows that he relied and acted upon them believing them to be true. Now, with knowledge upon his part, several months before the decree of distribution was made, that the estate was valuable; that Mr. Ford did not recognize any relationship; that Mr. Hampton failed to answer his letters, and that the estate was in process of settlement and distribution, what efforts did the plaintiff make to have his rights protected? He resided in the state of Pennsylvania, and was a farmer by occupation. He applied to two or three of his friends in that state to assist him. It does not appear that either he, or they, took any steps to make an appearance in the court where the proceedings were pending; that he, or they, ever communicated with any lawyer in this state to ascertain whether or not any arrangements could be made to have his claim presented to the court, and to have his legal rights then and there heard and determined.

The only excuse which he offers is that he was "in rather poor circumstances and in poor health;" that he was "scant of money and hard to get along; that he had no means to go to Virginia City  *  *  *  or to send some one there." It is not shown that plaintiff's mental faculties were impaired, as claimed by his counsel.  His deposition is quite lengthy, and, although there are discrepancies in some material portions of it, he seems to have remembered dates and events, and to have given his testimony in an ordinarily intelligent manner.   The only testimony, in addition to his own, upon this point, is "that Royce was a person of delicate health, and subject to frequent and violent epileptic fits; and that said Royce was a man in poor and needy circumstances; and was such in the year 1874, and ever since has been poor and in delicate health."

These facts, however important they might have been in determining this case upon its merits, had the plaintiff shown that he had relied upon the representations of Hampton and Ford, and had thereby been misled to his prejudice, are not sufficient to excuse him, upon his knowledge of the condition of affairs, as before stated, from making an effort to appear in the proceedings in the district court. He could, notwithstanding his poverty and ill-health, have written letters and ascertained the names of prominent and reliable attorneys residing in Virginia City.  He could have communicated with the attorneys, setting forth the facts, and could, doubtless, have secured their services upon reasonable terms.   His financial circumstances and poor health are not shown to have been in any better condition after the decree of distribution than before, and he is now represented by able counsel.   It is, therefore, fair to presume that he could have procured counsel as well before as after the settlement of his sister's estate if he had made an eff't to do so.

The law a ; those who are vigilant, and not those who sleep upon or slumber over their rights.  Courts "can not obliterate the recognized rules of law, requiring of all persons the diligence and attention demanded of a prudent man in the transaction of his own business, and establish a

measure of care and diligence for each particular case."
(*Boyd* v. *Blankman*, 29 Cal. 43.)

The facts found by the court in its nineteenth, twentieth, twenty-second, twenty-sixth, twenty-seventh, and twenty-eighth findings, relative to the negligence of plaintiff, are, in our opinion, fully sustained by the evidence.

2. Counsel for appellant argue that notwithstanding this negligence upon the part of their client the decree should be set aside because Hampton, as administrator, and Ford, the husband, committed a fraud upon the court in concealing from it the fact that plaintiff *claimed* to be a brother of the deceased. The record shows that Hampton, soon after his appointment as administrator, was made aware of the fact that plaintiff claimed to be a brother of Mrs. Ford, deceased; that he was about the same time notified by Mr. Ford that plaintiff was a bastard, and was not entitled to any share of the estate. These facts he communicated to Messrs. Mesick and Seely, attorneys for the estate. He seems to have acted in good faith in administering upon the estate. The evidence "shows that in all of said estate proceedings he acted entirely under the advice of the said attorneys."

Upon the trial of this cause it was expressly admitted by counsel for plaintiff " that no actual fraud, concealment, or misrepresentation had been in any wise intended by defendant, J. C. Hampton, in the estate proceedings of said Oliva Rosanna Ford in said district court, either upon said court or plaintiff."

The only question, therefore, which presents itself upon this branch of the case, is whether or not it was the official duty of the administrator to notify the court that Royce had written letters to him claiming to be an heir of the estate? Administrators should be held to the utmost good faith and strict performance of official duty. But they are mere creatures of the statute, and are only bound to perform such duties as are imposed upon them by the law. The decree of distribution in the estate of Mrs. Ford was not made upon the petition of the administrator, and we know of no provision of the law that required him, under the cir-

cumstances shown to have existed, to notify the court that Royce claimed to be an heir of the estate.

With reference to the husband of the deceased, upon whose petition the decree was made, but little need be said. If he knew that Royce was an heir of the estate, it was his duty to inform the court of this fact. But the truth is that Ford claimed to be the sole heir of the estate. He verified his petition setting forth this fact, and caused due notice thereof to be published to the world in the manner provided by the statute of this state.

It is true that the evidence shows that prior to the death of his wife, when visiting the plaintiff at his home in Pennsylvania, during the year 1874, Ford "recognized said Royce as his wife's brother and talked of him as such publicly and openly." The fourteenth finding of fact, in so far as it states that Mr. Ford "always claimed that plaintiff Royce was not the lawful brother of said Oliva Rosanna Ford," is not sustained by the evidence. But the fact is that after the death of his wife and prior to the month of November, 1875, and always thereafter, he claimed that no relationship existed. Upon the cross-examination of the plaintiff, when defendants' counsel called for the production of the letter of Mr. Ford to plaintiff, denying any relationship, "plaintiff's counsel states that the letter is lost and can not be found, * * * that a copy of that letter is not here." Thereupon defendants' counsel asked plaintiff this question: "In that letter Ford distinctly stated, did he not, *that he recognized no relationship between himself and you,* and requested you not to call him brother?" The plaintiff answered as follows: "He said something similar to that; *that was the substance of it.*"

With the exceptions already noted, and perhaps in a few other minor and unimportant particulars, the findings of fact necessary to support our conclusions are sustained by the evidence, and support the conclusions of law arrived at by the district court.

The judgment of the district court is affirmed.

By BEATTY, C. J.: I concur in the judgment.

This case was decided before BELKNAP, J., took his seat.